UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: PATRICK C. MARTIN,

     Debtor.

_____

UNITED STATES OF AMERICA,

     Appellant,

v.

BRAE ASSET FUND, L.P. and PATRICK J. MARTIN,

     Appellees.
_____/

BK No. SG05-17981
(Chapter 7)

CASE NO. 1:09-CV-963

HON. ROBERT J. JONKER

## OPINION AND ORDER

The United States of America ("the IRS") appeals from a judgment of the Bankruptcy Court. The Bankruptcy Court rejected on summary judgment the IRS's bid to treat tax assessments related to the debtor's 2000 and 2001 income tax returns as priority claims under 11 U.S.C. § 507(a)(8)(A)(iii).[1] If the IRS obtains priority status on the 2000 and 2001 debts, it will receive all or virtually all of the Chapter 7 debtor's estate. Without priority status, the IRS will receive only a pro rata distribution on those tax claims, which will leave the debtor's only other creditor, Brae Asset Fund, L.P., with a substantial amount of the debtor's estate.

The pivotal question is one of statutory interpretation. The IRS claims that section 507(a)(8)(A)(iii) priority applies because the IRS exercised its right to assess the 2000 and 2001 tax

---

[1] All parties now agree that the Bankruptcy Court properly found that the 2002 income tax assessment is entitled to priority treatment under 11 U.S.C. § 507(a)(8)(A)(i).

years within the six-year statute of limitations period for substantial understatements of income, instead of pursuing those tax assessments on a fraud theory. Brae argues that the assessments are not entitled to priority because, regardless of how the IRS decided to treat the tax debts, the debtor, as a matter of fact, filed fraudulent tax returns in 2000 and 2001, thus falling within an explicit statutory exception to priority. The Bankruptcy Court adopted Brae's statutory construction, gave the IRS an opportunity to contest the factual claim of fraud, and then ruled for Brae on summary judgment after the IRS elected not to contest the factual claim of fraud. This appeal followed.

## Factual and Procedural Background

The debtor, Patrick Martin, filed for bankruptcy in 2005. There are two creditors to whom his Chapter 7 bankruptcy estate will be distributed: the IRS and Brae. Brae's claims for $1,813,709.90 are general unsecured claims that will be paid only after any priority claims. In early 2006, the IRS assessed to the debtor approximately $360,000 in additional taxes and accuracy penalties for the tax years 2000, 2001, and 2002. It applied the 2002 assessment under the standard, three-year statute of limitations. *See* 26 U.S.C. § 6501(a). It applied the 2000 and 2001 assessments under the six-year statute of limitations that applies to substantial omissions. *See* 26 U.S.C. § 6501(e)(1). The IRS chose not to classify the debtor's returns as fraudulent or to assess him a civil fraud penalty under 26 U.S.C. § 6663.

All parties concede that the IRS's claim for approximately $120,000 related to the 2002 tax year is entitled to priority under section 507(a)(8)(A)(i). The question is how to classify the IRS's claims for approximately $240,000 related to the 2000 and 2001 tax years. Brae will suffer a reduced–or no–distribution if the IRS's claims for 2000 and 2001 receive priority treatment. In bankruptcy court, the IRS asserted that its claims related to 2000 and 2001 were entitled to priority

under 11 U.S.C. § 507(a)(8)(A)(iii). Brae objected to the priority treatment of those claims, and filed an adversary proceeding. After a hearing on Brae's objection, the Bankruptcy Court directed the IRS to file a summary judgment motion regarding the nature of its claim. In that motion, the IRS contended that it had unilateral authority to determine whether the 2000 and 2001 claims fell into the fraud exception to section 507(a)(8)(A)(iii); that it had decided not to classify the tax debts as fraudulent; and that it was therefore entitled to priority.

On November 19, 2008, the Bankruptcy Court rendered a bench opinion rejecting the IRS's argument that it had sole authority to treat the claim as arising from fraud. The court determined that the 2000 and 2001 debts could not be treated as priority claims under section 507(a)(8)A)(iii) if those debts were actually the result of fraud as defined in 11 U.S.C. § 523(a)(1)(C), even if the IRS had chosen not to assess a fraud penalty on the claims and had assessed the tax under a non-fraud statute of limitations. The court concluded that a trial was necessary to determine whether the tax debts were, in fact, ones "with respect to which the debtor made a fraudulent return." *See* 11 U.S.C. § 523(a)(1)(C).

On July 6, 2009, Brae filed for summary judgment on the priority status of the IRS's 2000 and 2001 claims. It contended that there was no genuine issue of material fact that the debtor's 2000 and 2001 tax returns were fraudulent as defined in section 523(a)(1)(C) and therefore not entitled to priority under section 507(a)(8)(A)(iii). The IRS responded, but it did not dispute that the debts were fraudulent as a matter of fact. Instead, it reasserted its statutory interpretation arguments from its earlier summary judgment motion. In light of the IRS's failure to demonstrate an issue of material fact regarding whether the tax debts were the product of fraudulent returns, and after finding independent support in the record to conclude that the debtor had filed fraudulent returns, the

Bankruptcy Court concluded that the tax debts arose from fraudulent returns. It therefore granted Brae's motion for summary judgment and denied priority treatment to the 2000 and 2001 tax debts. The Bankruptcy Court did not reach a final decision on whether the debtor would be bound to a finding of non-dischargeability under section 523(a)(1)(C), however, because no one had initiated a non-dischargeability proceeding. The IRS appealed to this Court.

## Discussion

The standard of review on appeal is clear error as to the Bankruptcy Court's findings of fact and de novo as to its conclusions of law. *In re Batie*, 995 F.2d 85, 88 (6th Cir. 1993). The IRS contends that the Bankruptcy Court erred in three ways. First, it contends that Brae lacked standing to object to the priority treatment of the IRS's claims. Second, it contends that the tax debts from 2000 and 2001 are entitled to priority under section 507(a)(8)(A)(iii) as a matter of law so long as the IRS assessed them for a lawful reason other than fraud. Third, it contends that if the 2000 and 2001 debts are not entitled to priority, then the Bankruptcy Court's determination that the tax debts were the product of fraudulent returns should be res judicata against the debtor for the purposes of dischargeability.

I. Brae has standing to contest the IRS's priority claim.

The Bankruptcy Court concluded that Brae had standing to object to the priority treatment of the IRS's claims because the trustee did not object and because Brae stood to suffer a reduced distribution if the IRS's claims received priority treatment. The IRS contends that Brae lacked standing to object, arguing that Brae does not have a cognizable interest in whether the IRS's claims receive priority treatment. The IRS's contention is without merit.

To have standing, a party must show that it meets three constitutional requirements: "(1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not

conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Wuliger v. Mfrs. Life Ins. Co.,* 567 F.3d 787, 793 (6th Cir. 2009) (quotation omitted). Here, it is clear–and all parties concede–that Brae meets these constitutional standing requirements. *See id.* The IRS contends, however, that Brae lacks prudential standing to object to the priority treatment of its claims. In general, there are three prudential standing requirements in addition to the constitutional standing requirements. *See id.* The prudential requirements are: "(1) a plaintiff must assert his own legal rights and interests, without resting the claim on the rights or interests of third parties; (2) the claim must not be a 'generalized grievance' shared by a large class of citizens; and (3) in statutory cases, the plaintiff's claim must fall within the 'zone of interests' regulated by the statute in question." *See id.*

Brae has met the first two requirements because it will suffer a reduced distribution from the bankruptcy estate if the IRS's priority claim succeeds. *Cf. Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702, 707 (6th Cir. 2009). It also meets the third requirement because it is a "party in interest" within the meaning of 11 U.S.C. § 502(a). *See In re FBN Food Servs., Inc.*, 82 F.3d 1387, 1391 (7th Cir. 1996). Brae is a "party in interest" because it has "a legally protected interest that could be affected by a bankruptcy proceeding"–specifically, Brae will suffer a reduced distribution if the IRS's claims receives priority treatment. *See id.* Brae therefore is within the "zone of interests" the relevant statute intends to protect, and it has standing to object to the IRS's priority claim. *See id.*; s*ee also In re Thompson*, 965 F.2d 1136, 1147 (1st Cir. 1992) (holding that a creditor's standing is not eliminated by the existence of a Chapter 7 trustee, although the trustee may prevent a creditor from pursuing his objection without the court's permission).

The IRS contends, without support, that Brae must demonstrate standing under every statute that might affect the Court's interpretation of the bankruptcy provision at issue. Specifically, the IRS contends that Brae cannot raise its priority objection under the bankruptcy code unless it would have standing under the tax code to assert that the return was fraudulent. This argument is without merit. A party need not demonstrate standing for every statute that might affect the outcome of a case; instead, a party must show only that it has standing to raise its claim under the statute the party seeks to enforce. Here, Brae has standing to object to the IRS's claim for priority because, as a general creditor directly affected by the priority decision, Brae is "a party in interest" within the meaning of the bankruptcy code. Brae is not stepping into the shoes of the IRS and seeking a judicial determination that the debtor must pay a fraud assessment under the tax code; instead, it is seeking a determination under the bankruptcy code that, if successful, will protect its rights as a creditor. The tax code is not "the relevant statute in question" in this case, and it accordingly has no relevance to whether Brae has standing in this bankruptcy matter. *See Wuliger,* 567 F.3d at 793; *In re FBN Food Servs., Inc.*, 82 F.3d at 1391.

    II.    The IRS's claim for tax debt is not entitled to priority under section 507(a)(8)(A)(iii) if the tax is of a kind specified in section 523(a)(1)(C), regardless of how the IRS elected to assess it.

Indeed, the pivotal issue in this case is one of statutory construction of a bankruptcy provision. The language of the statute itself is the starting point in statutory interpretation. *United States v. Plavcak*, 411 F.3d 655, 660 (6th Cir. 2005). Unless they are otherwise defined, the words in a statute "will be interpreted as taking their ordinary, contemporary, common meaning." *Id.* When "construing a federal statute, it is appropriate to assume that the ordinary meaning of the language that Congress employed accurately expresses its legislative purpose." *Id.* at 600-60

(internal quotation marks omitted). If the statutory language is unambiguous, "the judicial inquiry is at an end, and the plain meaning of the text must be enforced." *Id.* at 661 (quotation omitted).

The critical statutory provision at issue in this appeal is 11 U.S.C. § 507(a)(8)(A)(iii). That provision grants priority to "allowed unsecured claims of governmental units," but "only to the extent that such claims are for"

> a tax on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition--
>
> > (i) for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;
> >
> > (ii) assessed within 240 days before the date of the filing of the petition, exclusive of [certain periods].
> >
> > (iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case[.]

11 U.S.C. § 507(a)(8)(A). The basic structure of the priority scheme gives priority to tax debts arising from the three tax years immediately preceding the bankruptcy filing, regardless of when the debt was assessed, and over tax debts actually assessed in the eight months before the bankruptcy filing. It also gives priority under 507(a)(8)(A)(iii) for other lawful post-petition assessments, for income and gross receipt taxes "other than a tax of the kind specified in section 523(a)(1)(B) or 523(a)(1)(C).

The question is how to apply the statutory exception language. Brae says the exception divests of priority all assessments for tax debts that in fact involved a fraudulent return, even if the IRS actually chose some other lawful basis for assessment, like the provisions permitting an assessment within six years for a substantial understatement of income. The IRS contends that the exception to priority only applies when fraud is the only lawful basis for the assessment, and the

7

basis actually used by the IRS. Here, all the parties agree that the IRS lawfully assessed the 2000 and 2001 tax debts under the tax provisions that permit assessment within six years for a substantial understatement of income. On the other hand, the IRS and Brae also concede that the summary judgment record establishes that the tax returns for 2000 and 2001 were fraudulent within the meaning of section 523(a)(1)(C). How does the statute apply in such a case? The Court finds that the language of the statute reads decisively in favor of Brae. Moreover, case law and the legislative history are also uniformly in support of Brae's interpretation.

The unambiguous, common-sense way of reading section 507(a)(8)(A)(iii) is that the "other than a tax of a kind" phrase modifies and limits the preceding "tax on . . . income" phrase that introduces the entire priority provision. Indeed, this is exactly how all three romanettes in section 507(a)(8)(A) are constructed: In each, the first phrase in the romanette modifies the introductory language ("a tax") found in subparagraph (A). Thus, section 507(a)(8)(A)(iii) grants priority for an unsecured claim of governmental units for "a tax . . . other than a tax of a kind specified in section . . . 523(a)(1)(C) . . . ." The structure of the statute and the unambiguous statutory language make whether the tax claim is for a tax of a kind specified in 523(a)(1)(C) the threshold determination. Accordingly, if the claim is for "a tax . . . with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax," 11 U.S.C. § 523(a)(1)(C), then the tax claim is not entitled to priority. *See id.*

The IRS's contention, by contrast, requires a virtual rewriting of the statutory language. To reach the IRS's conclusion, one must replace the statute's reference to section 523(a)(1)(C), a part of the bankruptcy code that describes taxes not subject to discharge, with a reference to 26 U.S.C. § 6501(c), a part of the tax code that eliminates the statute of limitations for assessments made on fraudulent returns. This shifts the statutory structure and language to focus on the basis of the tax

assessment, rather than the categorical description of non-dischargeable tax debts. Indeed, the IRS would require the Court to read into the statute an additional and unexpressed limitation: Tax debts are excluded from priority if they are *assessable only by reason of 26 U.S.C. § 6501(c)*. The plain language of the statute, however, excludes from priority any tax that is of a kind described in section 523(a)(1)(C), that is, any tax debt that actually involved a fraudulent return, regardless of the IRS selected basis for assessment. The IRS's interpretation is contrary to the plain language of the statute.

This Court's interpretation of section 507(a)(8)(A)(iii) also accords with the opinion of the other courts that have considered this issue. *See, e.g.*, *United States v. Zieg*, 206 B.R. 974, 978 (D. Neb. 1997). In *Zieg*, like here, the IRS declined to assess a fraud penalty on a taxpayer. The IRS contended that because it had not assessed a fraud penalty, no fraud had occurred and its claim for the tax could not be one "of a kind specified" in section 523(a)(1)(C). *See id.* The bankruptcy court disagreed, and, based on the debtor's admissions, found the tax return to be fraudulent. Because the court found that IRS's claim for the unpaid tax was one "of a kind specified" in 523(a)(1)(C), it did not accord priority to the claims under section 507(a)(8)(A)(iii). *Id.* at 977-78. On appeal, the district court affirmed the bankruptcy court's determination. *Id.*

Additionally, the Court's construction implements a reasonable congressional policy decision. At first blush, it may seem odd to deny tax priority for a fraudulent taxpayer's debt, but to permit it (at least for years 3-6) for a grossly negligent taxpayer who substantially understates income without actual fraud. Why should the IRS lose priority status in this case just because the taxpaying debtor's conduct crossed the line from reckless disregard to actual fraud? A look at the legislative history supplies the answer of Congress. The purpose of this provision is to balance the interest of general creditors, the debtor, and the tax collector. S. Rep. 95-989, at 14 (1978), *as*

9

*reprinted in* 1978 U.S.C.C.A.N. 5787, 5800. A further goal was ensure that taxpayers consider the interaction between the tax and bankruptcy codes to be fair by not "permitting taxpayers to use bankruptcy as a means of improperly avoiding their tax debts." *Id.* The Court's interpretation of the plain language of section 507(a)(8)(A)(iii) advances these goals by ensuring that tax debts arising from fraudulent returns do not unduly burden the debtors estate and reduce the funds available for general creditors. *See id.* And yet, the interpretation also prevents the debtor himself from escaping the consequences of his own fraud by precluding discharge of tax debts that arise from fraudulent returns, thereby preserving public confidence in the tax and bankruptcy codes. *See id.* This was the aim of Congress, and it is certainly a reasonable judgment for Congress to make.

The Bankruptcy Court properly interpreted the statutes and held that the IRS's claim was not entitled to priority if the claim was for a tax debt that involved fraud. It also properly granted summary judgment to Brae because Brae offered evidence that the IRS's claim was for tax years involving fraudulent tax returns, and the IRS failed to put forward any disputed, material fact that would have made summary judgment on the issue inappropriate.

> III. Whether the Bankruptcy Court's priority determination under section 507(a)(8)(A)(iii) binds the debtor for the purposes of nondischargeability under section 523(a)(1)(C) is not properly before the Court at this time.

The Bankruptcy Court denied priority treatment under section 507(a)(8)(A)(iii) to the IRS's claims for 2000 and 2001. In doing so, it necessarily concluded, at least for the IRS and Brae, that the tax debt was one that qualified under section 523(a)(1)(C): that is, the tax debt was one "with respect to which the debtor made a fraudulent return." *See* 11 U.S.C. § 507(a)(8)(A)(iii); *see also* 11 U.S.C. § 523(a)(1)(C). But what about the debtor, who really had no direct interest in the priority dispute? The Bankruptcy Court stated that it was "not inclined to bind [the debtor] to this ruling for the purposes of determining whether the tax debts will survive discharge." (August 12, 2009 Order,

docket # 5 ex. 13) The Bankruptcy Court reasoned that its grant of summary judgment was "not a determination of the dischargeability of the tax debt pursuant to 11 U.S.C. § 523(a)(1)(C)" because the debtor had not participated meaningfully in the contested matter and because the IRS had "decided not to press the issue." (*Id.*) Indeed, no one has yet filed a nondischargeability complaint against the debtor.

The IRS contends on appeal that the Bankruptcy Court's Order should be res judicata on the debtor. Alternately, it contends that the Bankruptcy Court's statement that it would not extend res judicata to the determination was an advisory opinion. This issue is not the proper subject of this appeal. As the IRS points out, neither the debtor nor the IRS has filed a complaint to determine dischargeability. Moreover, the Bankruptcy Court has not made a final determination with regard to either dischargeability or res judicata. Instead, it simply left those questions open for interested parties, and it gave the parties the courtesy of its current thinking. The Bankruptcy Court thereby put the parties on notice of their need to press the issue in an appropriate proceeding if they wanted a final answer. Accordingly, there is no final adjudication on this question that this Court could hear as an appeal or to which it could give res judicata effect. *Cf. In re M.T.G., Inc.*, 403 F.3d 410, 413 (6th Cir. 2005); *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

Accordingly, it is **ORDERED** that the August 13, 2009 Judgment of the Bankruptcy Court granting Brae's motion for summary judgment is **AFFIRMED**.

Dated: March 9, 2010	/s/ Robert J. Jonker
ROBERT J. JONKER
UNITED STATES DISTRICT JUDGE